IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| vs. | * | CASE NO. 4:16-CR-33 (CDL) |
| LARRY D. ANDERSON, | * | |
| Defendant. | * | |

O R D E R

Defendant has moved to dismiss the Government's indictment with prejudice, arguing that the Government violated his rights to due process and compulsory process of witnesses in his favor under the Fifth and Sixth Amendments to the United States Constitution. For the reasons explained in the remainder of this Order, Defendant's motion (ECF No. 23) is denied.

BACKGROUND

Defendant is a former employee of CoreCivic, Inc., which owns and operates the Stewart Detention Center in Lumpkin, Georgia ("Stewart"). Immigration detainees are confined at Stewart pursuant to a contract with the Department of Homeland Security ("DHS"). Based on information provided to it by CoreCivic's internal investigator, the DHS's Office of Inspector General ("DHS-OIG") initiated an investigation into the possession of marijuana by detainees at the detention center.

That investigation identified Defendant as a suspected supplier of the marijuana.

Defendant was observed entering a closet at Stewart with detainee Yimi Rodriguez-Moreno. Sometime thereafter, Rodriguez-Moreno was suspected of smoking marijuana with another detainee, Donnet Messen-Leon. As part of the investigation, DHS-OIG agents interviewed the detainees, but they refused to cooperate. Eventually, DHS-OIG agents interviewed Defendant, who admitted to providing marijuana to Messen-Leon in exchange for $200. He also admitted that he brought the marijuana into the facility and left it in the chemical closet for one of the detainees to retrieve. Defendant provided a signed statement to that effect. To corroborate Defendant's confession, the agents secured a search warrant for Rodriguez-Moreno's and Messen-Leon's blood and/or urine to conduct a chemical analysis to detect marijuana. That analysis revealed that Messen-Leon had used marijuana. Phone records also show that Defendant was in contact with Rodriguez-Moreno's girlfriend, Brady Gonzales, who Defendant admitted paid him in connection with the marijuana transaction.

In October of 2016, the Government indicted Defendant, charging him with one count of distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) and one count of providing contraband in prison in violation of 18 U.S.C. § 1791(a)(1). Indictment, ECF No. 1. An attorney from the Federal Defenders

Office was appointed to represent Defendant. As part of discovery, the Government turned over materials to Defendant's counsel. These materials included recorded phone calls from Messen-Leon and Rodriguez-Moreno to various people outside of Stewart.[1] Exercising appropriate diligence, Defendant's counsel had a subpoena issued to Stewart to make sure that she obtained any information relating to the charges against her client. In response to that subpoena, Defendant's counsel received three written statements by other CoreCivic employees that had not been provided by the Government as part of its previous discovery disclosures. The Government claims that it was unaware of these statements. In one of the statements, a CoreCivic employee, Wanda Tolbert, states that Messen-Leon told her that Defendant "did not bring him anything" and that another officer gave him contraband. *See, e.g.*, Def.'s Mot. to Dismiss Ex. C, Statement of Wanda Tolbert, ECF No. 23-3. By the time Defendant's counsel obtained the Tolbert statement, Messen-Leon had been deported.

In a classic illustration of the adage "the left hand doesn't know what the right hand is doing," the various departments of the Executive Branch suggest that they were

---

[1] Although the recorded phone calls are not in the present record, Defendant's counsel represented at the hearing on the pending motion that the recordings capture Rodriguez-Moreno and Messen-Leon implicating various other officers in the distribution of contraband inside Stewart.

3

unaware that another investigative agency had the statements.[2] The statements were obtained by an internal investigator for CoreCivic and were in her custody and control. Although the investigator testified at the hearing that she would have turned them over to DHS-OIG as a matter of her standard practice, she was unable to testify that she definitively did so. And the agent for DHS-OIG testified that he never saw the statements prior to the deportation of Messen-Leon. Moreover, there is no evidence that the United States Attorney's Office ("USAO") received the statements until Defendant's counsel provided them.

Defendant maintains that the statement constitutes exculpatory evidence that should have been disclosed earlier pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and that Messen-Leon is a material witness who would potentially provide exculpatory and favorable testimony. Because Messen-Leon has been deported, Defendant has been deprived of the right to present this evidence. He therefore seeks to have the charges against him dismissed with prejudice based upon the violation of his Fifth and Sixth Amendment rights to due process and compulsory process.

---

[2] This phrase has come to be regarded as a criticism for lack of coordination, but it appears to have originated in a different context. *See Matthew* 6:3 (King James) ("But when thou doest alms, let not thy left hand know what thy right hand doeth.")

DISCUSSION

The Court rejects Defendant's contention that the Government committed a *Brady* violation by failing to disclose the statements. To establish a *Brady* violation, Defendant bears the burden of showing "(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *United States v. Stein*, 846 F.3d 1135, 1146 (11th Cir. 2017) (quoting *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002)). First, there is no evidence in the record that the Government possessed the written statements or was otherwise aware that Messen-Leon had potentially exculpatory information until Defendant's counsel turned the written statements over to the USAO, which occurred after Messen-Leon had been deported. *Cf. Downs v. Sec'y, Fla. Dep't of Corrs.*, 738 F.3d 240, 258-59 (11th Cir. 2013) (finding no *Brady* violation where the government failed to disclose a witness's statement that another person told the witness that he had actually killed the victim that the defendant was charged with murdering where the government was unaware of the witness's statement until after trial). And the fact that CoreCivic's

5

internal investigator was aware of the statements is insufficient to establish that the Government was also aware of them or aware that Messen-Leon had potentially exculpatory information. *See United States v. Naranjo*, 634 F.3d 1198, 1212-13 (11th Cir. 2011) (explaining that knowledge of information held by a non-federal investigative agency is not imputed to the Government when "the separate investigative teams do not collaborate extensively"). Thus, the argument that "the right hand should have known what the left hand was doing" is foreclosed by the evidence in the present record, which fails to show that the DHS-OIG or the USAO was aware of the existence of the statements prior to the deportation of Messen-Leon, the witness-declarant.

Second, Defendant cannot show that the Government suppressed the statements or that he could not obtain them with reasonable diligence. Defendant's counsel's diligence allowed her to obtain the statements approximately seven months prior to the trial. *See Stein*, 846 F.3d at 1146 (finding that the defendant failed to establish that he could not obtain the evidence with reasonable diligence where he was able to obtain the evidence before trial); *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995) (finding that the defendant could not show the prosecution suppressed evidence of which the defendant or his attorney knew about before trial). Thus, Defendant has the

6

evidence that the Government failed to disclose well in advance of trial. Defendant nevertheless argues that by the time the statements were obtained, the witness who made the statement had been deported and is not subject to compulsory process. But, as discussed above, there is no evidence that the Government knew or was aware that Messen-Leon had favorable testimony before it deported him.

Finally, as explained below, there is no reasonable likelihood that the testimony Messen-Leon would likely provide could affect the outcome at trial. It thus follows that there is no reasonable likelihood that such testimony, or the written statements, *would* affect the outcome, which is the standard for materiality under *Brady*. *See Strickler v. Greene*, 527 U.S. 263, 291 (1999) (explaining that a defendant must establish a reasonable *probability*, not a reasonable *possibility*, of a different outcome, *i.e.* that the evidence would affect the outcome, not that it could); *see also Stein*, 846 F.3d at 1147 (explaining that a "could have affected" materiality standard under is a lower hurdle than *Brady*'s "would have affected" standard). Accordingly, the Court finds that the Government's failure to disclose that Messen-Leon had potentially exculpatory testimony, including the written statements reciting Messen-Leon's utterance to Tolbert, does not constitute a *Brady* violation.

Defendant's next argument is that the Government's deportation of Messen-Leon deprived Defendant of his rights under the Compulsory Process Clause of the Sixth Amendment and that requiring him to proceed to trial without the opportunity to subpoena Messen-Leon deprives him of a fair trial. The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. It "does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (quoting U.S. Const. amend. VI). Accordingly, to establish a violation of this right, Defendant must "make some plausible showing of how [the deported witness's] testimony would have been both material and favorable to his defense." *Id*.[3]

Based upon the present record, the Court finds that if Messen-Leon appeared at trial and willingly testified, he would likely testify consistent with the statement he made to Tolbert that Defendant "did not give him anything" and that he received

---

[3] The Court is sympathetic to Defendant's position because he was not afforded an opportunity to interview Messen-Leon before the Government deported him, but the Supreme Court has instructed lower courts that such a lost opportunity does not "afford[] [a] basis for wholly dispensing" with the materiality requirement. *Valenzuela-Bernal*, 458 U.S. at 870.

any contraband from another corrections officer. *See* Def.'s Mot. to Dismiss Exs. B-D, ECF Nos. 23-2 to 23-4; *accord* Minute Entry for Pretrial Conference, Gov't's Exs. 1-3, ECF Nos. 30-1 to 30-3. Even if he renounced that statement at trial, Defendant would be permitted to impeach him with Tolbert's testimony. Thus, the issues are whether this testimony is favorable, whether it is plausible that he would even testify, and whether the testimony is material.

The Court finds that the testimony would be favorable to Defendant because it casts doubt on whether Defendant provided him with the marijuana and arguably implicates someone else as the supplier. But viewing the evidence in its entirety based upon the present record, the Court finds that Defendant has not carried his burden of plausibly establishing that Messen-Leon would likely testify and that his testimony would be material. The context in which the statement was made, his subsequent response during the investigation, and the legal jeopardy such testimony may subject him to suggest that he would not likely testify at trial even if he had not been deported. Tolbert testified at the hearing that Messen-Leon only told her that Defendant did not give him the marijuana in response to her cajoling him about why Messen-Leon was getting other officers in trouble. Further, the DHS-OIG agent who interviewed Messen-Leon testified at the hearing that Messen-Leon was a member of the

MS-13 street gang, that he had a felony record, that Messen-Leon refused to give him any information regarding the investigation, and that such gang members typically do not cooperate with law enforcement or testify about their criminal activity. Moreover, it would be against his interest to waive his Fifth Amendment right against self-incrimination, and no evidence has been presented as to why he would waive that fundamental right. It is sheer speculation to suggest that Messen-Leon would testify had he not been deported. But even if the Court assumes that Messen-Leon would testify consistent with his statement to Tolbert, the Court finds that Defendant has failed to show a violation of his right to compulsory process because Messen-Leon's testimony would not be material to his defense.

Testimony is considered "material" to an accused's defense if "there is a reasonable likelihood that the testimony could . . . affect[] the judgment of the trier of fact." *Valenzuela-Bernal*, 458 U.S. at 874 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). To determine whether Defendant has made a plausible showing that the omission of Messen-Leon's testimony is material, the Court must evaluate the likely effect of Messen-Leon's plausible testimony in the context of the entire record. *Id*. at 868, 874 n.10. Assuming Messen-Leon's testimony would be consistent with his statement to Tolbert, the Court does not find that it is reasonably likely

that such evidence could affect the judgment of the trier of fact when viewed in conjunction with the rest of the record.

It is undisputed that Defendant admitted to DHS-OIG agents that he provided marijuana to Messen-Leon. The unrebutted testimony of one of those agents is that Defendant not only admitted to providing the marijuana to Messen-Leon in exchange for $200, but also that Defendant described in detail how he transported the marijuana into Stewart without detection by hiding it in his underwear and how he placed the marijuana in a chemical closet where it was later retrieved by a detainee. Although Defendant's counsel represented at the pretrial conference that she intends to argue that Defendant's confession should not be taken as true and that it was, perhaps, coerced, Defendant has not yet moved to exclude his confession. And there is no evidence in the record to suggest that Defendant's confession was somehow involuntary. While the Court expresses no opinion as to whether Defendant is or is not guilty, there is currently no evidence in the record from which the Court could reasonably conclude that the testimony Messen-Leon would plausibly offer could create reasonable doubt to overcome Defendant's unrebutted confession. Thus, even assuming Messen-Leon would testify that an officer at Stewart other than Defendant provided him with marijuana, the Court finds that such testimony would not be material to Defendant's defense.

*Cf. United States v. Sierra-Estrada*, 248 F. App'x 973, 976–77, 982-83 (10th Cir. 2007) (finding probable testimony of alleged coconspirator who had been deported that he did not conspire with or know defendant immaterial in light of defendant's own confession that he did conspire with the witness). Because Messen-Leon's testimony would not likely make a difference, his absence does not violate Defendant's Sixth Amendment right to compel the attendance of favorable witnesses to trial or otherwise deprive him of a fair trial.[4]

CONCLUSION

Defendant failed to carry his burden of plausibly demonstrating that Messen-Leon would have provided favorable and material testimony had he not been deported. Accordingly, Defendant's motion to dismiss the indictment (ECF No. 23) is denied.

IT IS SO ORDERED, this 21st day of August, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] The Court leaves open the possibility that Messen-Leon's statement to Tolbert may be admissible under Federal Rule of Evidence 804(b)(6) or Federal Rule of Evidence 807.